## HOLLINS *v.* ST. PAUL, M. & M. R. Co. *et al.*

(*Supreme Court, Special Term, New York County.* November 26, 1889.)

CORPORATIONS—STOCKHOLDERS—ULTRA VIRES.

Where a plan for reorganization of a railroad company is not prohibited by law, one who purchases stock, after the plan is adopted, from a stockholder who voted for such plan, cannot insist that it is *ultra vires*.

At chambers. Action by Frank C. Hollins against the St. Paul, Minneapolis & Manitoba Railroad Company and others.

*William B. Hornblower*, for plaintiff. *Thomas G. Shearman* and *Frederic R. Coudert*, for defendants.

INGRAHAM, J. The plaintiff in this action, as stockholder of the St. Paul, Minneapolis & Manitoba Railway Company, asks for an injunction restraining and enjoining the defendant from doing any act to carry into effect a certain scheme or plan adopted by the stockholders of the corporation, and from making any transfer of any of the assets of the corporation to an alleged corporation called the "Great Northern Railway Company," or to any other corporation or person in pursuance of said scheme or plan. It appears that the plan or scheme was submitted to the stockholders of the Manitoba Railway Company, who were present or represented at the annual meeting of such shareholders. The shareholders there present or represented owned more than three-fourths of the entire capital stock of the company, and the plan or scheme was adopted by a unanimous vote of the shareholders present. At the time of said annual meeting, the plaintiff was not a shareholder of the company, but subsequently, and between October 31st and November 11th, purchased 500 shares of the capital stock of the said company, which stock was on the 11th of November, 1889, transferred to the plaintiff. All of the then owners of the stock now owned by the plaintiff were present or represented at the meeting of the stockholders, and voted in favor of the plan or scheme mentioned. Since the adoption of the plan or scheme, the stockholders of the Manitoba Company have subscribed for stock of the Great

Northern Railway Company of the par value of $16,323 out of the total capital of $20,000. Many of the stockholders thus subscribing have paid their first installment, and some have paid the full amount of the stock subscribed for by them.

It is clear that any injunction restraining the defendants from carrying out this plan would entail serious loss upon those stockholders who have sub-- scribed to the stock of the Great Northern Railway Company. It does not appear that there is anything in the plan proposed that is expressly prohibited by statute or which is *per se* illegal; and the first question presented is whether the plaintiff, who has acquired his stock since the promulgation and adoption of the plan in question from the stockholders who were present, and voted in favor of the plan, cannot claim that the plan is illegal, and beyond the power of the directors or the stockholders of the company. In *Kent* v. *Mining Co.*, 78 N. Y. 186, the general rule is stated that, when a corporation does an act not expressly prohibited by law, though there is a want of power to do it, and which affects only the interests of the stockholders, they may be made good by the assent of the stockholders, so that strangers to the stockholders, dealing in good faith with the corporation, will be protected; and in the same case, at page 188, the rule is stated that "the assignee of corporate stock takes no greater right than his assignor had to give, and is subject to all the equities which burden the assignor." Applying these familiar principles, I do not think, as against either the corporation or the persons who, relying upon the action of the stockholders, have subscribed for the capital stock of the new company to carry out the plan proposed, the plaintiff can now insist that the proposed plan is *ultra vires*, or, at any rate, is in such a position as to ask a court of equity to enjoin the officers of the corporation or the corporations defendant from doing what his predecessors, as owners of the stock, expressly authorized and directed the officers of the company to do. Whether or not a preliminary injunction should be granted in such an action is largely in the judicial discretion of the court, and where a single stockholder, owning a very small portion of the stock of the corporation, seeks to restrain a corporation from doing an act ratified by a large majority of the stockholders, he must present to the court a clear legal right to the relief demanded, and that the injunction he asks for is essential to the preservation of his legal rights. The corporations sought to be affected by this injunction are Minnesota corporations. The property is largely in the state of Minnesota, and the legality of the proposed actions must be determined by the laws of Minnesota. To the courts of that state would properly belong the determination of the questions involved in this action; and, while the courts of this state would interfere to protect the rights of one of its citizens, when such interference is necessary, it would only be justifiable where the application to the court was made in good faith, and for the sole purpose of protecting the interests of the plaintiff, and where the interference of the court was necessary for that purpose. In none of the cases cited by the plaintiff does it appear that the persons from whom the plaintiff purchased the stock owned by him expressly authorized the doing of the act to which objection is made; and, under the circumstances as they appear in this case, I do not think the plaintiff has shown himself entitled to the relief asked. Motion for injunction should therefore be denied, with $10 costs, to abide the event.